St. Louis, Iron Mountain & Southern Railway Co. *v.* Haist.

Opinion delivered February 28, 1903.

1.  Infant—Substitution of Next Friend for Foreign Guardian.—Where a suit is brought by an infant by her foreign guardian, it was not error to permit her to substitute a resident as her next friend.  (Page 262.)

2.  Conflict of Laws—Extraterritorial Tort.—Civil code of Louisiana, art. 2315, giving to a minor child the right to recover for the wrongful killing of its parent, creates a cause of action of a transitory nature, which is similar to that created by Sand. & H. Dig., §§ 5908, 5911, 5912, and may be enforced in this state.  (Page 263.)

3.  Pleading—Foreign Statute.—The substance and effect of a statute of another state may be pleaded, without setting it out *in haec verba.*  (Page 265.)

4. RAILWAY—NEGLIGENCE OF VICE-PRINCIPAL.—A railway company is liable in Louisiana for the death of a fireman caused by the combined negligence of the engineer and conductor, the latter being a vice-principal. (Page 266.)

5. SAME—NEGLIGENCE OF CONDUCTOR.—Where it was the duty of the conductor to see that the engineer side-tracked his train at a certain station to await the passing of another train, but, being asleep, he neglected to do so when if he had been awake he could have signalled to the engineer to stop, he was guilty of negligence, under the law of Louisiana, rendering the railway company liable for the death of the fireman in the resulting collision. (Page 266.)

6. DAMAGES—LOSS OF TRAINING AND EDUCATION.—Where there was evidence that plaintiff's intestate was an honest, hard-working man who had provided for plaintiff and treated her properly, it was not error to instruct the jury that if they find for plaintiff they may consider such care, support and sustenance and such advantages and benefits in the way of training and education, both moral and intellectual, as they may believe from the evidence that she would have received from him if his injury and death had not occurred. (Page 268.)

Appeal from Saline Circuit Court.

ALEXANDER M. DUFFIE, Judge.

Affirmed.

On the 7th of February, 1899, William Haist, a fireman on one of defendant's freight trains, operated at the time in the state of Louisiana, was killed in a collision between the train he was on and a passenger train on a rainy night, near a station on the defendant's road called Howcott. One Watkins was engineer on said freight train, and John C. Farrar was the conductor. The testimony is to the effect that it was the duty of these officers to have sidetracked this freight train at said station of Howcott to await the passing of the passenger train, which was on time, and was approaching Howcott; that at the time of passing Howcott, the conductor of the train was asleep in the caboose, and did not know when his train passed Howcott; that the engineer's watch was 50 or 60 minutes slow, and that he supposed he would have ample time to reach Antoine, another station ahead, before the passenger train would reach it, and, so thinking, ran past Howcott without attempting to sidetrack his train, and about four miles from Howcott the freight train collided with the passenger train, causing the death of Haist. To recover damages

for the alleged negligent killing of Haist, this suit was brought by his daughter, Anna Elizabeth Haist, a minor, by H. E. Burnham, her legally appointed guardian by the court of Nebraska. The complaint alleges that defendant was a railroad corporation, operating its railway through Rapides Parish, Louisiana; that on February 7th, 1899, Wm. Haist, father of Anna E. Haist, was in the employ of defendant on one of its trains as fireman; that the train upon which Wm. Haist was working as fireman was negligently caused to collide with another of defendant's trains, and in the collision he was killed; that said collision and death occurred at Pollock station, in the state of Louisiana, and was the result of negligence of the defendant and its employees; that, under the laws of Louisiana, any person who, by any act whatever, causes damage to another, is liable for said damages, and is held to repair the damage, and the right of this action survives, in case of death, in favor of the minor child and widow of the deceased, or either of them, and the survivor may recover damages sustained by the death of the parent; that Wm. Haist left no widow, and that Anna E. Haist was his only child and heir, and, under the laws of Louisiana, was the proper person to bring suit; that Wm. Haist cared for and supported the said child, and would have continued to do so, had he lived; that by reason of said injury, pain, suffering and death of said Wm. Haist, and the negligent causing of same, his said child was damaged $40,000; ending with the usual prayer.

An amendment to the complaint alleged as follows:

That the injury, pain, suffering and death of Wm. Haist was caused by the negligence of defendant in operating its trains and the negligence of the train dispatcher in failing to give proper directions, and by reason of not having a sufficient number of men to operate its train with safety, and by permitting its employees laboring on said train to work an unreasonable length of time without rest or sleep, and by reason of its conductor not directing and causing said train to be switched at Howcott, so as to provide for the safe passage of the train with which it collided; that, under the laws of Louisiana, a conductor or person in charge of a railroad train does not bear the relation of a fellow-servant to the fireman of the train, and the company is liable for his negligence; that, also, under the laws of Louisiana, a railway company is liable for the negligent acts of its train dispatcher, and for not having a sufficient number of employees on the train, and for allowing its men to labor without sleep an unreasonable length of time.

Upon objection being taken to the capacity of a foreign guardian to sue in the state, the complaint was amended, by leave of court, by inserting the name of T. N. Robertson as next friend of Anna Elizabeth Haist, to which defendant objected.

The answer specifically denied the allegations of the complaint, and alleged that the death of the intestate was caused by the negligence of the engineer, a fellow servant.

The testimony of experienced lawyers practicing in Louisiana tended to show that in that state engineer and fireman are fellow servants, but that the conductor of a train, having command of the other employees, and representing the railroad company is not a fellow servant with the engineer, but is a vice-principal, and that in case of injury through the negligence of a fellow servant and conductor the railroad company is liable.

Verdict and judgment were rendered for plaintiff in the sum of $1,800. Defendant has appealed.

*Dodge & Johnson,* for appellant.

The plaintiff, being a foreign guardian, had no capacity to maintain this suit, in the absence of any statutory authority. 16 Ark. 381; Story, Confl. Laws, §§ 499, 504; 4 G. & J. 332; 16 Ark. 381. This objection is jurisdictional, and may be raised on demurrer. 63 Mo. 302; 45 *Id.* 469; 43 *Id.* 196; 51 N. H. 247; s. c. 12 Am. Rep. 108. See, generally, upon power of foreign guardian to sue: 37 Pa. St. 60; 35 N. H. 495; 51 N. H. 247; Schouler, Dom. Rel. 445; Story, Confl. Laws, § 504; Cooley, Const. Lim. 340. The right of action for death of a human being is purely statutory. 33 Ark. 353; Cf. Sand. & H. Dig. §§ 5911-12. Since the killing took place in Louisiana, the statutes of Arkansas on this question can not be applied. 51 S. W. 635. Nor can the courts of this state enforce the laws of Louisiana. 43 S. W. 627; 9 S. W. 540; 22 S. W. 249, 250; 22 S. W. 1062; 38 Vt. 294; 18 Kan. 46; 61 Tex. 433; 45 Md. 45; 72 Md. 145; 38 Vt. 299; 25 Ohio St. 667; 143 Mass. 301; 98 Mass. 91; 10 Ohio St. 121; 5 Sawy. 439; 37 Wis. 347; 16 S. W. 487. For points of difference between Louisiana and Arkansas statutes, see Sand. & H. Dig. §§ 5911-12, and Civ. Code La. Art. 2315, as construed in 50 La. Au. 57. See also 4 S. W. 627; 9 S. W. 540. If a suit is based upon a foreign statute, same must be pleaded *in haec verba* and proved. 6 Abb. Pr. 239; 30 Barb. '433; s. c. 10 Abb. Pr. 71; 98 N. Y. 377; 10 So. 661; 43 Ga. 461; 18 Ill. App. 328; 61 Ia. 441; s. c. 16 N. W.

351; 45 Md. 41; 6 Coldw. 582. The court erred in allowing the amendment by substitution of next friend for guardian. 56 Ark. 155; 18 Ala. 395; 57 Ala. 168; 49 Me. 536; 51 Cal. 154. It was error to give plaintiff's third instruction. 63 S. W. 996; 52 Ill. 290; 69 Ill. 526; 37 La. Ann. 654; 42 *Id.* 689.

*Murphy & Mehaffy* and *Robertson & Martineau,* for appellee.

The act of 1873 (Sand. & H. Dig. § 3626) does not repeal the act of 1843 (§ 1, art. 7, Gould's Digest) allowing suits by foreign guardians. *Cf.* 7 Baxt. 210. The minor was the real party in interest, and the guardian simply appeared in the action as a representative, and not as a party. 1 Estee's Pldg. § 479; 95 Cal. 456; 64 Cal. 593; 87 Cal. 530; 32 Cal. 111; 91 Am. Dec. 566; 157 U. S. 195; 36 Ind. 214; 85 N. Car. 113; 75 N. Car. 263. The foreign guardian might even be regarded as a proper person to sue as next friend. 13 Mont. 70; 3 N. H. 345; 126 Pa. St. 426; 49 Mich. 50; 24 S. W. 604; 9 Utah, 23; 96 N. Car. 19; 6 Coldw. 619. The court had jurisdiction of the subject-matter. 39 Minn. 11; 62 Ark. 254; 51 Ark. 459; 47 Am. St. 771; 63 Ia. 70; 65 Ia. 727; 31 Minn. 11; s. c. 145 U. S. 593; 20 S. W. 819; 103 U. S. 11; 8 Baxt. 341; 49 Ga. 106; 84 N. Y. 48; 168 U. S. 445; 15 Mo. App. 503; 10 Ill. App. 618; 117 Ind. 439; 80 N. W. 776; 57 N. Y. St. 485; 96 Fed. 80; 15 L. R. A. 583; 155 Mass. 176; 56 Am. Dec. 200. The statutes of Louisiana and Arkansas are similar upon the right of action in such cases as this. 13 L. R. A. 461; *Cf.* Civ. Code La. § 2315; Sand. & H. Dig. §§ 5908, 2911, 5912. The Louisiana statute is also a "survival statute." Civ. Code § 2315, as amended by Act No. 71, 1894; 37 La. An. 650; 40 La. An. 178. The law of Louisiana giving the right of action will be enforced by our courts. 15 Mo. 509; 78 Ill. App. 290; 13 L. R. A. 461; 99 N. Y. 267; 126 Pa. St. 207; s. c. L. R. A. 261; 168 U. S. 448; 62 Ark. 254. The law of Louisiana was sufficiently pleaded. 1 Scam. 418; 117 N. Y. 130; 33 Conn. 34; 148 Ill. 266; 116 U. S. 1, 7; 108 Ill. 628.

Hughes, J. In this case, Anna Elizabeth Haist, a minor, was the real plaintiff, and by amendment to the complaint, by leave of the court, T. N. Robertson was her next friend who represented and cared for her interest in the suit which had been brought for her. There was no error in the allowance of the amendment by the substitution of T. N. Robertson as next friend, instead of the

foreign guardian, H. E. Burnham. In discussing this question, the supreme court of the United States, in *Morgan* v. *Potter*, 157 U. S. 198, said: "It is the infant, and not the next friend, who is the real and proper party. The next friend, by whom the suit is brought on behalf of the infant, is neither technically nor substantially the party, but resembles an attorney, or a guardian *ad litem*, by whom a suit is brought or defended in behalf of another." This is the doctrine of the more modern decisions on this question. *Whittem* v. *State*, 36 Ind. 214; *George* v. *High*, 85 N C. 113.

Though the suit was brought by a foreign guardian, who was not qualified to sue in this state, the court ought not to have dismissed it, the infant being the real and proper plaintiff, but did right in appointing some one as next friend to look after her interest in the suit, who was qualified to sue for her. *Hoskins* v. *White*, 13 Mont. 70; *Young* v. *Young*, 3 N. H. 345; *Johnson* v. *Blair*, 126 Pa. St. 49; *Tate* v. *Mott*, 96 N. C. 19.

Did the circuit court have jurisdiction of the subject-matter of this suit? The plaintiff, Anna Elizabeth Haist, was a minor, residing in the state of Nebraska, and brought this suit to recover damages alleged to have been caused by the negligence of the defendant in the state of Louisiana, by the killing of William Haist, her father. That William Haist, the father, was killed in the state of Louisiana, while acting as fireman on defendant's train, without any negligence upon his part, in a collision between a freight train and a passenger train on defendant's railway, about four miles from Howcott, in Rapides Parish, is clear from the evidence in the case. That that collision was caused by the negligence of the servant or servants of the defendant on the defendant's train is equally clear from the proof in the case. A right of action therefore accrued to the said Anna Elizabeth Haist. It was brought in Hot Spring county, Arkansas. The action is transitory. *Chicago, St. Louis & New Orleans Ry. Co.* v. *Doyle*, 60 Miss. 977. Will the courts of Arkansas enforce such rights of action as this arising in the state of Louisiana by virtue of her laws? It is not a question whether the laws of Arkansas have any extra-territorial force.

Counsel for appellant contend that the acts of Arkansas and the acts of Louisiana giving the right of action for the wrongful killing of a human being are so dissimilar that such right accruing under the Louisiana statute can not be enforced in the courts of

Arkansas. But it seems to us "quite evident that the two statutes are of similar import. They are founded upon the same principles, are aimed at the same evil, construct the same kind of action, and give it for the benefit of the same class of individuals. In both the utter failure of redress at common law where the injury ended in death was the injustice for which a remedy was enacted; and in both the new action was given for the benefit of those who had suffered an injury as the consequence of the wrong. This fundamental agreement in the main and substantial characteristics of the two statutes is not affected by the differences of detail which the demurrer points out." *Wooden* v. *Western N. Y. & P. R. Co.*, 13 L. R. A. 461; *Stoeckman* v. *Terre Haute, etc., R. Co.*, 15 Mo. App. 509; *Stewart* v. *B. & O. R. Co.*, 168 U. S. 448; *St. L., I. M. & So. Ry. Co.* v. *Brown*, 62 Ark. 254. Public policy in this state is not violated by the enforcement of the Louisiana statute in our courts.

The laws of Louisiana read as follows:

"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it; the right of this action survives, in case of death, in favor of the minor children and widow of the deceased, or either of them, or in default of these in favor of the surviving father and mother, or either of them, for the space of one year from the death. The survivors above mentioned can also recover the damages sustained by them by the death of the parent or child, or husband or wife, as the case may be." Civil Code, art. 2315.

The Arkansas statutes (Sand. & H. Dig.) read as follows:

"Sec. 5908. For wrongs done to the person or property of another an action may be maintained against the wrongdoers, and such action may be brought by the person injured, or, after his death, by his executor or administrator against the wrongdoer, or, after his death, against his executor or administrator, in the same manner and with like effect in all respects as actions founded on contracts.

"Sec. 5911. Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or company or corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding

the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony.

"Sec. 5912. Every such action shall be brought by, and in the name of, the personal representatives of such deceased person, and if there be no personal representatives, then the same may be brought by the heirs at law of such deceased person; and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin, in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and, in every such action, the jury may give such damages as they shall deem a fair and just compensation, with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person. *Provided*, every such action shall be commenced within two years after the death of such person."

Did the complaint state facts sufficient to constitute a cause of action? It was not necessary that it should set out the Louisiana statute *in haec verba* in pleading the statute. To set out the substance and effect of the statute was sufficient. *Hanley* v. *Donoghue*, 116 U. S. 1, 7; *Louisville, N. A. & C. Ry. Co.* v. *Shires*, 108 Ill. 628; *Stacy* v. *Baker*, 1 Scam. 418; *Consolidated Tank Line Co.* v. *Collier*, 148 Ill. 266.

Is the verdict sustained by the evidence? The conductor, Farrar, was asleep or dozing when his train passed Howcott, where it ought to have been run on to the side track to let the approaching passenger train pass. The engineer of the freight train disregarded his duty, and failed to sidetrack at Howcott. Consulting his watch, which was 50 or 60 minutes slow, he had concluded that he had time enough to reach Antoine, the next station ahead, before the passenger would reach it, and, disregarding his duty under this mistake as to the time, he ran by Howcott without stopping, and without any signal from the conductor. This was evidently negligence on the part of the engineer which contributed to the collision between the passenger train and the freight train, which collision caused the death of William Haist. But William Haist was a fellow servant with the engineer, and could not recover if the negligence of the engineer alone caused the injury. But did the negligence of the conductor, Farrar, contribute to the collision of the trains, and is the company liable for the combined negligence of the conductor and the engineer? It is held under the decisions

in Louisiana that, if injury is caused by the combined negligence of a fellow servant and a vice principal on a railroad, the railroad company is liable, and that a conductor personates the company, and is a vice principal.

It was the duty of the conductor to see to it that all the employees under him understood and discharged their duties. He and the engineer both had time tables, and knew when and where to stop. The trains were running on time. He, the conductor, had means of signaling the engineer, and of stopping the train by the brakes and brakeman at his command, when necessary. He knew, or ought to have known, when the freight train passed Howcott, and, knowing that the passenger was on time and would soon be at Howcott, and that it was all-important that his train should be sidetracked there to prevent the fatal collision which occurred a few miles further on, it was his duty to have his train side-tracked at Howcott to await the passing of the passenger. As he was asleep at Howcott, and made no effort to have the freight stop there, it does seem that there can be no question that he was not in the discharge of a plain and very important duty, and that his negligence contributed to the collision which deprived the fireman, William Haist, of his life; and, being a vice principal, the company is liable.

Was there error of law in the court's instructions to the jury? They are as follows:

The court, on plaintiff's request, gave the following instructions:

"1. If you believe, from the evidence, that Wm. Haist was in the employ of defendant as fireman on a locomotive drawing one of its freight trains on one of its tracks or lines of railroad, in the state of Louisiana, on the 7th day of February, 1899; that while in such employ, the locomotive or train on which he was serving came into collision with a passenger train of defendant, or an engine drawing it, and that he was thereby killed, or so badly injured that he died in a short time thereafter; (b) that the freight train on which he was serving should have been sidetracked at Howcott, so as to let the passenger pass it, and that if it had been so side-tracked, the collision would not have occurred; (c) that the conductor knew that Howcott was the proper place to take the sidetrack with his freight train, and let the passenger train pass it, but that he was negligently asleep, dozing or inattentive when Howcott was reached, and so failed to know when it was reached, and thereby negligently permitted the freight train to go ahead on the main

track, and thereby caused the collision; (d) that under the unwritten law of the state of Louisiana, as it is and then was, the conductor of a railroad train in that state represents or personates the railway company, and that the company is liable under said law for any damages or injury caused to its other employees on the train by or through such conductor's negligence or inattention in conducting the train; (e) that under and by provision of the statute law of the state of Louisiana, as it is and then was, any person who by any act whatever causes damages to another is bound to repair the damage, and that the right of action therefor survives in case of death in favor of the minor children or widow of deceased who survive him, and that such survivors have also the right to recover the damages sustained by them by the death of the deceased; (f) that said William Haist left no widow, but left the plaintiff, Anna Elizabeth Haist, as his only child and heir at law, whose mother was then dead; (g) that he contributed to plaintiff's support, and that plaintiff is a minor, and was damaged by his death— you should find for the plaintiff."

"2.    If from the evidence you find the facts and the law of Louisiana as stated in the foregoing instruction, then it makes no difference whether the injury or death of William Haist was or was not contributed to by any negligence or mistake of the engineer."

"3.    If you find for the plaintiff, your verdict should be for such a sum of money as you believe from the evidence would be a just and fair compensation for all the pecuniary injury suffered by her by reason of the injury and death of the said William Haist, and, in arriving at this sum, you may take into consideration such care, support and sustenance, and such advantages and benefits in the way of training and education, both moral and intellectual, if any, as you may believe from the evidence she would receive from or through him if his injury and death had not occurred."

"4.    If you find from the evidence that the conductor of the freight train personated or represented the defendant as vice principal, under the law of Louisiana, then he was not a fellow servant of the fireman."

Defendant excepted separately to the giving of each of paragraphs a, b, c, d, e, f and g, of plaintiff's instruction numbered 1. It also objected to the giving of instructions 2, 3 and 4, and, its separate objections being overruled, exceptions were saved.

Defendant asked the following instructions, which were given:

"1.    The court instructs the jury that the mere fact that the

intestate, Haist, was killed in a collision on defendant's road while he was engaged in his duties as fireman does not make the defendant liable to plaintiff in this suit for damages occasioned thereby; but the proof must show further, and show affirmatively, that the collision which caused his death was due to some negligence upon the part of the defendant."

"12. The court instructs the jury that they are not at liberty to take the aggregate of any such amounts for any such years, nor a sum which, at interest, would yield such amounts; but the true measure of damages is the present value of such sum, judged by the number of years that such contributions might be expected to continue, as shown by the proof.

"13. The court instructs the jury that, in assessing damages in a case of this kind, they are not assessed by way of penalty, or punishment, nor of sentiment, nor to compel the defendant to contribute to the support of a minor, but are allowed only upon the basis of such pecuniary loss as the proof shows the party in interest has sustained; and this is to be determined by the rules given you in the previous instructions."

We are of the opinion that there is no reversible errors in the instructions. Particular objection is urged to the instruction as to the measure of damages—that the jury might take into "consideration such care, support and sustenance, and such advantages and benefits in the way of training and education, both moral and intellectual, if any, as you may believe from the evidence she would receive from or through him if his injury and death had not occurred." It is said there is no evidence in the record to warrant this instruction. It is shown that Wm. Haist, the deceased, was an honest, hard-working, square man and a good fellow. This, it seems, would warrant an inference that he would properly provide for his child, being governed by the natural inclination of an honest, hardworking and sober father, which the deceased was shown to be. He had provided for her care and keeping after her mother's death, and it was shown that she was treated by her parents as a child ought to have been treated. As was said in *Railway* v. *Sweet,* 60 Ark. 559, "that was enough.  *  *  *  The attributes of such a character being shown in the father, the law would presume them of some value to his children, until the contrary was made to appear." *Railway Co.* v. *Maddry,* 57 Ark. 306; *McIntyre* v. *N. Y. Cent. Ry. Co.,* 37 N. Y. 287; 1 Greenleaf, Ev. § 33. We think that the evidence shows that the verdict is not excessive. Finding no reversible error, the judgment is affirmed.