**ULTIMATICS, INC., Plaintiff,**

v.

**MINIMATIC, INC., Defendant.**

Civ. No. 89–5058.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

June 29, 1989.

Cecil R. Kildow, Niblock Law Firm, Fayetteville, Ark., for plaintiff.

William Jackson Butt, II, Davis, Cox & Wright, Fayetteville, Ark., and Lawrence M. Kasen, Miami, Fla., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is a breach of contract action. Plaintiff alleges defendant supplied nonconforming goods that were rejected by plaintiff. The action was originally brought in the Circuit Court of Washington County, Arkansas, and removed to this court pursuant to 28 U.S.C. § 1441. It is asserted that this court has subject matter jurisdiction by reason of diversity of citizenship and the requisite amount in controversy pursuant to 28 U.S.C. § 1332.

Defendant has filed a motion to dismiss pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure, for lack of jurisdiction over the person. The motion is supported by a brief and the affidavit of Leon Shaw, the Chairman of the Board and Secretary-Treasurer of the defendant, Minimatic, Inc., a Florida corporation. Plaintiff, Ultimatics, Inc., an Arkansas corporation, has filed a response accompanied with the affidavit of Harris Goldman, the President of Ultimatics, Inc.

The defendant in support of its motion to dismiss argues that it does not have sufficient "minimum contacts" with the forum for the court to exercise personal jurisdiction over it. The defendant manufactures precision machine products and medical devices. It is undisputed that the defendant performs all of its manufacturing functions solely in the State of Florida and has no office, agent, employee, property or telephone listing in the State of Arkansas. Defendant further alleges that it does not solicit business in Arkansas by mail or catalog.

The business relationship between the parties began in 1984. In the normal transaction of business, plaintiff would submit manufacturing orders, by telephone or in writing, to defendant's office in Deerfield

Beach, Florida. All shipments of products to plaintiff have been "FOB Deerfield Beach, Florida," and all payments have been remitted to Minimatic in Florida. Over the course of the business relationship, Harris Goldman, in his capacity as plaintiff's president, has visited defendant's Florida facilities on at least three separate occasions.

The present controversy arises out of a contract entered into in September, 1986. The initial contact was made by plaintiff when it requested Minimatic to perform certain manufacturing services. The remaining contacts between the parties have been either by telephone or mail. After delivery of the goods called for in the September, 1986, contract, Ultimatics rejected the goods as nonconforming.

Plaintiff has not controverted defendant's allegations in regard to the contacts of the parties resulting in the September, 1986, contract. However, plaintiff asserts that the defendant places too much emphasis on the fact that Minimatic did not solicit the order from Ultimatics. Plaintiff urges the court to adopt a broader view which encompasses the entire working relationship of the parties rather than focusing merely on the contacts surrounding the 1986 contract. Plaintiff argues that where, as in this case, the negotiations which resulted in the contract to supply goods in the forum state are the furtherance of an ongoing business relationship in which the nonresident supplies goods for sale by the plaintiff in the forum state, the issue of whether the defendant purposefully availed itself of the laws of the forum state should not be determined by whether the nonresident or the resident initiated such negotiations.

For the purposes of this motion, the burden of proof is on the party seeking to establish this court's in personam jurisdiction. *Block Industries v. DHJ Industries, Inc.*, 495 F.2d 256 (8th Cir.1974). This burden can be met, however, by a prima facie showing that jurisdiction is conferred by the "long-arm" statute. *Id.* at 259.

As this action is founded on diversity of citizenship, the court must look to Arkansas law for the basis of in personam jurisdiction over a nonresident defendant. *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651 (8th Cir.1982). Plaintiff asserts that this court has personal jurisdiction over the defendant pursuant to the Arkansas "long-arm" statute, Ark.Code Ann. § 16–4–101 (1987).

It is now fundamental that the inquiry as to the existence of in personam "long-arm" jurisdiction requires a two-part analysis. The court must first determine whether the facts presented satisfy the requirements of the state "long-arm" statute. After that is determined, and only if that is determined affirmatively, the court must then determine whether the state's exercise of personal jurisdiction is consistent with the due process requirement of the Fourteenth Amendment. *Davis v. Kroger Co.*, 576 F.Supp. 1156 (W.D.Ark.1983); *Jeanway Industries, Inc. v. Knudson Mfg. Co.*, 533 F.Supp. 678 (W.D.Ark.1981).

The Arkansas long-arm statute provides certain listed bases for personal jurisdiction. The statute provides for personal jurisdiction over persons "transacting any business in this state" or "contacting to supply services or things in this state." Ark.Code Ann. §§ 16–4–101(C)(1)(a), 16–4–101(C)(1)(b). The term person includes a corporation whether or not it is organized under Arkansas law. Ark.Code Ann. § 16–4–101(A). When jurisdiction is premised on either of these sections, the cause of action must arise out of the transaction of business in this state or the supplying of things in this state. Ark.Code Ann. § 16–4–101(C)(2). *See also Krone v. AMI, Inc.*, 367 F.Supp. 1141 (E.D.Ark.1973). In this case, the cause of action arises out of the contract in which defendant agreed to supply goods to be resold in this state. Therefore, in the court's view, the Arkansas long-arm statute reaches the defendant in this case.

"The purpose of the Arkansas long-arm statute is to allow such personal jurisdiction over nonresidents as is allowed by the due process clause of the United States Constitution." *Kilcrease v. Butler*, 293 Ark. 454, 455, 739 S.W.2d 139 (1987), *citing*

*S.D. Leasing, Inc. v. Al Spain and Associates*, 277 Ark. 178, 640 S.W.2d 451 (1982); *Nix v. Dunavant*, 249 Ark. 641, 460 S.W.2d 762 (1970).

The court must now determine whether the exercise of personal jurisdiction is consistent with the due process clause. "The test for due process is whether there are sufficient 'minimum contacts' between the nonresident defendant and the forum state so that the assertion of personal jurisdiction over the nonresident defendant is consistent with traditional notions of fair play and substantial justice." *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 654 (8th Cir.1982), *citing World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "[T]he ultimate test is whether the [nonresident] defendant, *either as seller or buyer*, has performed 'some act by which [it has] purposefully [availed] itself of the privilege of conducting activities within the forum state' thus 'invoking the benefits and protections of its laws.'" *Mountaire* 677 F.2d at 654, *citing Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir.1977).

The Court of Appeals for the Eighth Circuit has determined that satisfaction of the due process standard may be measured by weighing the following factors: the nature and quality of defendant's contacts with the forum state; quantity of contacts; source and connection of the cause of action with those contacts; and, to a lesser degree, the interest of the forum state in providing a forum for its residents; and the convenience of the parties. *Aftanase v. Economy Baler Co.*, 343 F.2d 187 (8th Cir.1965).

The focus of the inquiry is on the relationship "among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). The protection afforded by the due process clause is aimed at giving the defendant "clear notice that it is subject to suit" in the forum and thus provide the opportunity to "alleviate the risk of burdensome litigation." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. As the Court of Appeals for the Eighth Circuit has noted, the "[a]pplication of *International Shoe* to specific fact situations, particularly to cases involving contract claims by resident plaintiffs against nonresident corporate defendants ... has produced somewhat inconsistent results." *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 655 (8th Cir. 1982) (citations omitted).

Ultimatic argues that the relationship between the parties supports the court's exercise of personal jurisdiction over Minimatic. Ultimatic contends that the fact of who initiated the contact with respect to the goods at issue herein should not be determinative of whether the defendant was purposely servicing the market in the forum state either directly or indirectly. Ultimatic contends the requisite minimum contacts can be found in the ongoing business relationship existing between the parties in which the defendant was supplying other goods of a similar nature to the plaintiff. Ultimatic argues the intent to serve the forum state is clearly demonstrated by the defendant's conduct of supplying goods for resale in the forum state.

"The foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. "It is a defendant's contacts with the forum state that are of interest in determining if in personam jurisdiction exists, not its contacts with a resident." *Aaron Ferer & Sons, Inc. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 455 n. 6 (8th Cir.1977). Where the defendant has "created 'continuing obligations' between himself and residents of the forum, *Travelers Health Assn. v. Virginia*, 339 U.S. [643] at 648, [70 S.Ct. 927 at 929, 94 L.Ed. 1154 (1950)] he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to

submit to the burdens of litigation in that forum as well." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Clearly, the absence of physical contacts with the state cannot defeat personal jurisdiction. As the court noted in *Burger King,* "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184. As long as the defendant has "purposefully directed" his actions toward residents of another state, personal jurisdiction may be exercised. *Id.* The existence of a contract cannot *alone* establish sufficient minimum contacts. *Id.* at 478, 105 S.Ct. at 2185. "It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479, 105 S.Ct. at 2185.

Applying these principles to the case herein, the court concludes the exercise of personal jurisdiction over the defendant is consonant with traditional notions of fair play and substantial justice. In making this decision the court is persuaded largely by virtue of the fact that an ongoing business relationship exists between the parties in which the defendant supplies custom made products to the plaintiff for resale in the State of Arkansas. The court concludes that the defendant's activities in Florida have reasonably foreseeable consequences in Arkansas.

In support of its argument that due process has not been satisfied, defendant relies primarily on *Mountaire Feeds, Inc. v. AgroImpex S.A.,* 677 F.2d 651 (8th Cir. 1982). *Mountaire Feeds* involved a nonresident buyer who purchased poultry and animal feeds from a resident seller. The resident seller, Mountaire, argued that its performance of the sales contact in Arkansas supported jurisdiction. The court re-

jected this argument concluding that Mountaire's unilateral performance in the forum state was insufficient to support the exercise of personal jurisdiction over the nonresident buyer. *Mountaire,* 677 F.2d at 655. The nonresident buyer apart from its contract had no other contacts with the State of Arkansas. All contact between the parties was by mail or telephone. *Id.*

The crucial distinction between the *Mountaire* case and the case presently before the court is that in this case the defendant has entered into a series of transactions resulting in its product being used and resold to Arkansas residents. The defendant, although not physically present in this state on any occasion, has put its product into the stream of commerce in Arkansas.

A separate order in accordance herewith will be concurrently entered.